### Robert Hogg v. The State.

#### No. 1695. Decided April 10, 1912.

**1.—Receiving Stolen Property—Ownership.**

Where the information alleged that C. H. Machen was the owner of the property alleged to have been stolen, and the evidence showed that he was doing business under the name of the City Lumber Company and that his brother, Frank Machen, was working for him, there was no variance between the allegation and proof of ownership.

**2.—Same—Sufficiency of the Evidence.**

Where, upon trial of receiving and concealing stolen property, the evidence sustained the conviction, there was no error.

Appeal from the County Court of McLennan. Tried below before the Hon. Tom. L. McCullough.

Appeal from a conviction of receiving and concealing stolen property; penalty, a fine of $25.

The opinion states the case.

*J. W. Taylor,* for appellant.—On question of insufficiency of the evi-

dence: Castleberry v. State, 35 Texas Crim. Rep., 388; Trail v. State, 57 S. W. Rep., 92.

On question of ownership: Frazier v. State, 18 Texas Crim. App., 434.

*C. E. Lane,* Assistant Attorney-General, for the State.

HARPER, JUDGE.—Appellant was prosecuted under information and complaint charging him with receiving and concealing stolen property, knowing it to have been stolen. He was convicted and his punishment assessed at imprisonment in jail for thirty days and by fine of $25.

In the trial of this case it was admitted that the property was stolen from the City Lumber Company of Waco by Howard Deckard, who delivered it to appellant. The information alleges that the property was stolen from C. H. Machen. From the evidence it appears that C. H. Machen was in business in Waco, actively in control of his own business. That he had, among others employed, his brother, Frank Machen, who was termed the yard man, and looked after and had control, under his brother, of the property in the yard including the cement stolen. C. H. Machen was doing business under the style and name of City Lumber Company, and was the sole owner of the lumber yard. Appellant insists that there was a fatal variance in the proof and the allegations in the information, in that the evidence shows that the cement stolen was the property of the City Lumber Company, and further that it shows the property was in the control and custody of Frank Machen, and therefore the information should have alleged ownership in the City Lumber Company, or in Frank Machen. We do not think these exceptions are well taken. It is not questioned that C. H. Machen in whom ownership was alleged, was the real owner of the property, and though he might have been doing business under a given name, it was proper in the information to give the name of the real owner. Frank Machen was working for his brother, and had his peculiar duties assigned to him, but inasmuch as C. H. Machen was in actual control and management of all the property, the fact that he, as yard man, had control of the property in the yard, was not that exclusive control and management of the property which rendered it essential to allege ownership in him. It would not be contended that Frank Machen would be responsible to his brother for the property stolen under the circumstances proven in this case, and it has been held that the possession of a servant is the possession of the master, and likewise where he is but an employee in a store, lumber yard, etc., and has control of a given department, the allegation is properly laid in the owner, when the owner attends to and looks after the entire business himself.

The only other serious contention is that the proof is insufficient to show that appellant knew the property was stolen at the time he re-

ceived it. The court in addition to his main charge gave appellant's three special charges on this phase of the case. While there was no direct testimony that appellant knew the cement was stolen, yet the circumstances proven were such as would support a finding of the jury to that effect. Appellant in his testimony admitted he had known Deckard for two years, and knew he drove a small express wagon, and did not deal in or handle cement, and yet he admits he contracted with him for cement before its delivery, and knew that it was delivered between sun down and daylight. These, with other circumstances, and his contradictory statements about from whom he obtained the cement would be strong circumstances upon which a jury could base such a finding.

There are no bills of exceptions in the record; the evidence supports the verdict, and this being a misdemeanor conviction, the judgment is affirmed.

*Affirmed.*